**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT CINCINNATI**

| | | |
|---|---|---|
| JAMIE DILLINGHAM | ) | CASE NO. |
| 301 East Oak Avenue, Apartment C | ) | |
| Trenton, Ohio 45067, | ) | JUDGE: |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **COMPLAINT FOR DAMAGES** |
| | ) | **AND INJUNCTIVE RELIEF** |
| OTTERBEIN MIDDLETOWN, LLC | ) | |
| 105 Adrian Boulevard | ) | **JURY DEMAND ENDORSED** |
| Middletown, Ohio 45005, | ) | **HEREIN** |
| | ) | |
| **Serve also:** | ) | |
| OTTERBEIN MIDDLETOWN, LLC | ) | |
| c/o GH&R Business Services, Inc. | ) | |
| Registered Agent | ) | |
| 312 Walnut Street, Suite 1800 | ) | |
| Cincinnati, Ohio 45202, | ) | |
| | ) | |
| -and- | ) | |
| | ) | |
| CHRISTINA AUGENSTEIN | ) | |
| c/o Otterbein Middletown, LLC | ) | |
| 105 Adrian Boulevard | ) | |
| Middletown, Ohio 45005, | ) | |
| | ) | |
| Defendants. | ) | |

Plaintiff, Jamie Dillingham, by and through undersigned counsel, as her Complaint against

the Defendants, states and avers the following:

**PARTIES**

1. Dillingham is a resident of the City of Trenton, County of Butler, State of Ohio.

2. Otterbein Middletown, LLC ("Otterbein") is a foreign limited liability company who

   conducts business at 105 Adrian Boulevard, Middletown, Ohio 45005.

*3.*     Otterbein was at all times hereinafter mentioned an employer within the meaning of Ohio R.C. § 4112.01 *et seq*; 42 U.S.C. 2000e-2 *et seq*.; 42 U.S.C. 126 § 12101 *et seq*.; and 29 U.S.C § 2601, *et seq*.

4.     Christina Augenstein was at all times herein a "person" within the meaning of Ohio R.C. § 4112.01(A)(3)

5.     Christina Augenstein was at all times herein a "person" within the meaning of 29 USC § 203(a).

6.      Christina Augenstein was at all times herein an "employer" within the meaning of 29 USC § 2611(4)(A).

7.     Christina Augenstein was at all times herein was an individual residing in Middletown, Ohio.

## JURISDICTION & VENUE

8.     Otterbein hires citizens of the State of Ohio, contracts with companies in Ohio, and owns or rents property in Ohio. As such, the exercise of personal jurisdiction over Otterbein comports with due process.

9.     This cause of action arose from or relates to the contracts of Otterbein with Ohio residents, thereby conferring specific jurisdiction over Otterbein.

10.     This court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 1341 inasmuch the matters in controversy are brought pursuant to the Civil Rights Act of 1964, 42 U.S.C. 2000e-2.

11.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Dillingham's state law claims because those claims derive from a common nucleus of operative facts.

12.     Venue is proper in this District because the wrongs herein alleged occurred in this District.

13. Within 300 days of the conduct alleged below, Dillingham filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 473-2024-00172 against Otterbein operating at 105 Adrian Boulevard, Middletown, Ohio 45005.

14. On or about November 3, 2023, the EEOC issued and mailed a Notice of Right to Sue letter to Dillingham regarding the Charges of Discrimination brought by Dillingham against Otterbein in EEOC Agency Charge No. 473-2024-00172.

15. Dillingham received her Right to Sue letter from the EEOC in accordance with 42 U.S.C. § 2000e-5(f)(1) - which has been attached hereto as Plaintiff's Exhibit A.

16. Dillingham has filed this Complaint within 90 days of the issuance of the Notice of Right to Sue letter.

17. Dillingham has properly exhausted her administrative remedies pursuant to 29 C.F.R. § 1614.407(b).

## FACTS

18. Dillingham is a former employee of Otterbein.

19. Dillingham was hired by Otterbein on or about August 10, 2022.

20. Dillingham was employed by Otterbein in the position of State Tested Nursing Assistant ("STNA").

21. Dillingham is female.

22. During Dillingham's employment, Dillingham made constant and regular reports of patient neglect. ("Whistleblower Reports")

23. The Whistleblower Reports included Dillingham reporting soiled clothing that went unchanged, feces on patients and their surroundings that went uncleaned, patients that went

uncleaned, patients being routinely left in bed for so long that the patients developed bed sores. ("Routine Patient Neglect")

24. The Whistleblower Reports were made in numerous forms, including written text messages and photographs.

25. The Whistleblower Reports were made to supervisors Christina Augenstein and Katie (Last Name Unknown).

26. Augenstein was Dillingham's supervisor.

27. Katie was Dillingham's supervisor.

28. Dillingham made the Whistleblowing Reports verbally.

29. Dillingham made the Whistleblowing Reports in writing.

30. In making the Whistleblowing Reports, Dillingham reasonably believed that the Routine Patient Neglect was a crime.

31. The Routine Patient Neglect was a crime.

32. In making the Whistleblowing Reports, Dillingham reasonably believed that the Routine Patient Neglect was a felony.

33. In making the Whistleblowing Reports, Dillingham reasonably believed that the Routine Patient Neglect was a criminal act that threatened the public's health or safety.

34. The Routine Patient Neglect was a criminal act that threatened the public's health or safety.

35. In making the Whistleblowing Reports, Dillingham reasonably believed that the Routine Patient Neglect created unsafe and dangerous working conditions.

36. The Routine Patient Neglect created unsafe and dangerous working conditions.

37. A clear public policy exists and is manifested in R.C. § 3721 against conduct such as the Routine Patient Neglect.

38.     Dillingham gave Otterbein the opportunity to cure the issues arising from Dillingham's
        Whistleblowing Reports.

39.     Otterbein retaliated against Dillingham for making the Whistleblowing Reports.

40.     On or about December 27, 2022, Dillingham witnessed Sheila (Last Name Unknown), an
        Otterbein employee, abusing a patient at an Otterbein long term care facility. ("Patient
        Abuse")

41.     The Patient Abuse took the form of Sheila roughly yanking a patient out of a chair.

42.     The Patient Abuse left bruises on the patient who Sheila abused.

43.     The Patient Abuse took place at a residential facility that meets the definition of a "Home"
        covered in R.C. § 3721.01.

44.     It was common knowledge among employees at Otterbein that Sheila abused and neglected
        patients before.

45.     The Patient Abuse was the first time that Dillingham witnessed the patient abuse by Sheila.

46.     Karen Johnson also witnessed the Patient Abuse.

47.     On or about December 27, 2022, Dillingham and Johnson reported the Patient Abuse to
        Augenstein. ("Patient Abuse Report")

48.     Dillingham made the Patient Abuse Report verbally.

49.     Dillingham made the Patient Abuse Report in writing.

50.     In making the Patient Abuse Report, Dillingham reasonably believed that the Patient Abuse
        was a crime.

51.     The Patient Abuse was a crime.

52.     In making the Patient Abuse Report, Dillingham reasonably believed that the Patient Abuse
        was a felony.

53. In making the Patient Abuse Report, Dillingham reasonably believed that the Patient Abuse was a criminal act that threatened the public's health or safety.

54. The Patient Abuse was a criminal act that threatened the public's health or safety.

55. In making the Patient Abuse Report, Dillingham reasonably believed that the Patient Abuse created unsafe and dangerous working conditions.

56. The Patient Abuse created unsafe and dangerous working conditions.

57. A clear public policy exists and is manifested in R.C. § 3721 against conduct such as the Patient Abuse.

58. Dillingham gave Otterbein the opportunity to cure the issues arising from Dillingham's Patient Abuse Report.

59. Otterbein retaliated against Dillingham for making the Patient Abuse Report.

60. Augenstein immediately separated Dillingham and Johnson and interrogated them separately.

61. Augenstein ordered Dillingham not to discuss the Patient Abuse with anyone else.

62. Augenstein ordered Dillingham not to report the Patient Abuse to anyone else.

63. Augenstein did not discipline Sheila for the Patient Abuse.

64. Augenstein did not terminate Sheila for the Patient Abuse.

65. After the Patient Abuse Report was made, Sheila threatened to physically assault Dillingham in retaliation for making the Patient Abuse Report. ("Retaliatory Harassment")

66. Otterbein was aware of the Retaliatory Harassment.

67. Otterbein did not discipline nor stop Sheila from continuing to commit the Retaliatory Harassment.

68. Towards the end of March 2023, Dillingham reported a nurse, Amber (Last Name Unknown), for neglecting patients. ("Report of Patient Neglect")

69. The Report of Patient Neglect detailed how Amber ignored patient calls, would never ask or answer questions about patient needs, and was inattentive towards patient needs. ("Patient Neglect")

70. Dillingham made the Patient Neglect Report verbally.

71. Dillingham made the Patient Neglect Report in writing.

72. In making the Patient Neglect Report, Dillingham reasonably believed that the Patient Neglect was a crime.

73. The Patient Neglect was a crime.

74. In making the Patient Neglect Report, Dillingham reasonably believed that the Patient Neglect was a felony.

75. In making the Patient Neglect Report, Dillingham reasonably believed that the Patient Neglect was a criminal act that threatened the public's health or safety.

76. The Patient Neglect was a criminal act that threatened the public's health or safety.

77. In making the Patient Neglect Report, Dillingham reasonably believed that the Patient Neglect created unsafe and dangerous working conditions.

78. The Patient Neglect created unsafe and dangerous working conditions.

79. A clear public policy exists and is manifested in R.C. § 3721 against conduct such as the Patient Neglect.

80. Dillingham gave Otterbein the opportunity to cure the issues arising from Dillingham's Patient Neglect Report.

81. In response to the Patient Neglect Report, Otterbein failed to take prompt remedial action.

82.     In response to the Patient Neglect Report, Otterbein retaliated against Dillingham for making the Patient Neglect Report.

83.     Otterbein knowingly forced Dillingham to work in a sexually hostile work environment through subjecting Dillingham to sexual harassment at the hands of a particular patient ("Predatory Patient"). ("Sexual Harassment")

84.     The Predatory Patient was a male.

85.     The Predatory Patient would repeatedly grope Dillingham and other female employees.

86.     The Predatory Patient repeatedly groped Dillingham without consent.

87.     The Predatory Patient repeatedly groped Dillingham's breasts, as well as other sensitive areas of Dillingham's body.

88.     On multiple occasions, the Predatory Patient would lure Dillingham to the Predatory Patient's room at night by calling for medical assistance, only to then confront Dillingham by openly stroking his erect penis while naked.

89.     Dillingham repeatedly told the Predatory Patient that the Sexual Harassment was unwanted and unwelcome.

90.     The Predatory Patient continued the Sexual Harassment against Dillingham.

91.     The Sexual Harassment was based on gender.

92.     The Sexual Harassment was unwanted by Dillingham.

93.     Dillingham opposed the Sexual Harassment.

94.     Dillingham was embarrassed by the Sexual Harassment.

95.     Dillingham was offended by the Sexual Harassment.

96.     A reasonable person would consider the Sexual Harassment to be offensive.

97.     The Sexual Harassment was severe.

98.    A reasonable person would consider the Sexual Harassment to be severe.

99.    The Sexual Harassment was pervasive.

100.   A reasonable person would consider the Sexual Harassment to be pervasive.

101.   The Sexual Harassment was a violation of the Defendant's policies.

102.   Alternatively, the Sexual Harassment was permitted by Defendant.

103.   The Sexual Harassment constituted harassment.

104.   The Sexual Harassment created a hostile work environment based on gender.

105.   The Sexual Harassment caused Dillingham emotional distress.

106.   The Sexual Harassment is intolerable in a civilized society.

107.   Alternatively, Defendants believe that Sexual Harassment is tolerable in a civilized society.

108.   On or around October 27, 2022, Dillingham reported the Sexual Harassment to Augenstein and Katie. ("Report of Sexual Harassment")

109.   In response to the Report of Sexual Harassment, Augenstein failed to take prompt remedial action.

110.   In response to the Report of Sexual Harassment, Katie failed to take prompt remedial action.

111.   In response to the Report of Sexual Harassment, Otterbein failed to take prompt remedial action.

112.   Otterbein has a policy of investigating significant workplace issues or events.

113.   The Report of Sexual Harassment reported a significant workplace issue or event.

114.   Pursuant to Otterbein's policies, the Report of Sexual Harassment should be investigated.

115.   Alternatively, pursuant to Otterbein's policies, the Report of Sexual Harassment should not be investigated.

116. An investigation should include interviewing the complainant.

117. An investigation should include interviewing the subject of the complaint.

118. An investigation should include interviewing the subject of the reported discrimination.

119. An investigation should include interviewing witnesses to the reported discrimination.

120. An investigation should include getting a written statement from the complainant.

121. An investigation should include getting a written statement from the subject of the complaint.

122. An investigation should include getting a written statement from the subject of the reported discrimination.

123. In response to the Report of Sexual Harassment, Defendants did not interview Dillingham.

124. In response to the Report of Sexual Harassment, Defendants did not interview the Predatory Patient.

125. In response to the Report of Sexual Harassment, Defendants did not interview any witnesses.

126. In response to the Report of Sexual Harassment, Defendants did not get a written statement from Dillingham.

127. In response to the Report of Sexual Harassment, Defendants did not get a written statement from the Predatory Patient.

128. In response to the Report of Sexual Harassment, Defendants did not get a written statement from any witnesses.

129. In response to the Report of Sexual Harassment, Defendants conducted no investigation whatsoever.

130. By failing to investigate the Report of Sexual Harassment, Defendants ratified the Predatory Patient's conduct.

131. By failing to investigate the Report of Sexual Harassment, Defendants allowed the Predatory Patient's conduct to continue.

132. Failing to investigate the Report of Sexual Harassment is an adverse action.

133. Failing to investigate the Report of Sexual Harassment is an adverse employment action.

134. Defendants willfully failed to investigate Report of Sexual Harassment.

135. Defendants intentionally failed to investigate Report of Sexual Harassment.

136. In response to the Report of Sexual Harassment, Defendants did not correct the Sexual Harassment.

137. In response to the Report of Sexual Harassment, Defendants did not tell Dillingham why they declined to correct the Sexual Harassment.

138. On or about June 29, 2023, Augenstein and Katie suspended Dillingham. ("Suspension")

139. Defendants' Suspension was retaliation for the Report of Sexual Harassment.

140. Defendants' Suspension was retaliation for the Whistleblower Reports.

141. Defendants' Suspension was retaliation for the Patient Abuse Report.

142. Defendants' Suspension was retaliation for the Patient Neglect Report.

143. Defendants' Suspension was because of Dillingham's gender.

144. By suspending Dillingham, Defendants made it less likely for a reasonable employee to make a report or oppose conduct like Sexual Harassment.

145. The Suspension constitutes retaliation.

146. The Suspension constitutes gender discrimination.

147. Defendants willfully engaged in Suspension.

148.   Defendants intentionally engaged in Suspension.

149.   The Suspension was an adverse action.

150.   The Suspension was an adverse employment action.

151.   Defendants engaged in Suspension with the intent to make Dillingham quit.

152.   The Suspension created an unlawfully discriminatory hostile work environment.

153.   The Suspension contributed to an unlawfully discriminatory hostile work environment.

154.   On June 30, 2023, Augenstein and Katie terminated Dillingham's employment. ("Termination")

155.   Defendants knew that it was unlawful to fire Dillingham in retaliation for the Whistleblower Reports.

156.   Defendants knew that it was unlawful to fire Dillingham in retaliation for the Patient Abuse Report.

157.   Defendants knew that it was unlawful to fire Dillingham in retaliation for the Patient Neglect Report.

158.   Defendants knew that it was unlawful to fire Dillingham in retaliation for the Sexual Harassment Report.

159.   Defendants have a progressive disciplinary policy.

160.   Defendants used a progressive disciplinary policy.

161.   Defendants used a progressive disciplinary policy for employees who did not report sexual harassment.

162.   Defendants used a progressive disciplinary policy for employees who are did not report patient abuse and neglect.

163.   Under the progressive disciplinary policy, Dillingham had not been given a verbal warning.

164.    Under the progressive disciplinary policy, Dillingham had not been given a written warning.

165.    Under the progressive disciplinary policy, Dillingham had not been given a final written.

166.    Under the progressive disciplinary policy, Dillingham had not been given a suspension.

167.    Prior to terminating Dillingham, Defendants never issued any written communication criticizing Dillingham for any reason.

168.    Defendants' termination of Dillingham's employment was retaliation for the Report of Sexual Harassment.

169.    Defendants' termination of Dillingham's employment was retaliation for the Whistleblower Reports.

170.    Defendants' termination of Dillingham's employment was retaliation for the Report of Patient Abuse.

171.    Defendants' termination of Dillingham's employment was retaliation for the Report of Patient Neglect.

172.    Defendants terminated Dillingham's employment because of Dillingham's gender.

173.    By terminating Dillingham's employment, Defendants made it less likely for a reasonable employee to make a report or oppose conduct like Sexual Harassment.

174.    By terminating Dillingham's employment, Defendants made it less likely for a reasonable employee to make a report or oppose conduct like Patient Abuse.

175.    By terminating Dillingham's employment, Defendants made it less likely for a reasonable employee to make a report or oppose conduct like Patient Neglect.

176.    The Termination constitutes retaliation.

177.    The Termination constitutes gender discrimination.

178. Defendants knowingly skipped progressive disciplinary steps in terminating Dillingham's employment.

179. Defendants knowingly terminated Dillingham's employment.

180. Defendants knowingly took adverse employment actions against Dillingham.

181. Defendants knowingly took adverse actions against Dillingham.

182. Defendants intentionally skipped progressive disciplinary steps in terminating Dillingham.

183. Defendants intentionally terminated Dillingham's employment.

184. Defendants intentionally took adverse employment actions against Dillingham.

185. Defendants intentionally took adverse actions against Dillingham.

186. Defendants knew that skipping progressive disciplinary steps in terminating Dillingham would cause Dillingham harm, including economic harm.

187. Defendants knew that terminating Dillingham would cause Dillingham harm, including economic harm.

188. Defendants willfully skipped progressive disciplinary steps in terminating Dillingham.

189. Defendants willfully terminated Dillingham's employment.

190. There was a causal connection between Dillingham's gender and the Termination.

191. There was a causal connection between Dillingham's Report of Sexual Harassment and the Termination.

192. There was a causal connection between Dillingham's Whistleblower Reports and the Termination.

193. There was a causal connection between Dillingham's Report of Patient Abuse and the Termination.

194. There was a causal connection between Dillingham's Report of Patient Neglect and the Termination.

195. As a result of Defendants' unlawful acts, Dillingham has suffered, and will continue to suffer harm.

**COUNT I: GENDER DISCRIMINATION UNDER R.C. § 4112.01 *et seq.***

196. Dillingham restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

197. Dillingham is a member of a statutorily protected class based on her gender under Ohio R.C. § 4112.01 et seq.

198. Defendants treated Dillingham differently than other similarly situated employees based on her gender.

199. Defendants discriminated against Dillingham on the basis of her gender throughout her employment with the company.

200. Defendants terminated Dillingham's employment without just cause.

201. Defendants terminated Dillingham's employment based on her gender.

202. Defendants' discrimination against Dillingham based on her gender violates Ohio R.C. § 4112.01 et seq.

203. Dillingham suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to Ohio R.C. § 4112.01 et seq.

204. As a direct and proximate result of Defendants' conduct, Dillingham suffered and will continue to suffer damages.

**COUNT II: GENDER DISCRIMINATION UNDER 42 U.S.C. 2000e-2** *et seq*

205. Dillingham restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

206. Dillingham is a member of a statutorily protected class based on her gender under 42 U.S.C. 2000e-2 et seq.

207. Defendants treated Dillingham differently than other similarly situated employees based on her gender.

208. Defendants discriminated against Dillingham on the basis of her gender throughout her employment with the company.

209. Defendants terminated Dillingham's employment without just cause.

210. Defendants terminated Dillingham's employment based on her gender.

211. Defendants' discrimination against Dillingham based on her gender violates 42 U.S.C. 2000e-2 et seq.

212. Dillingham suffered emotional distress as a result of Defendants' conduct, and is entitled emotional distress damages pursuant to 42 U.S.C. 2000e-2 et seq.

213. As a direct and proximate result of Defendants' conduct, Dillingham suffered and will continue to suffer damages.

**COUNT III: SEXUAL HARASSMENT UNDER R.C. § 4112.02** *et seq.*

214. Dillingham restates each and every paragraph of this Complaint as though it were fully restated herein.

215. Dillingham was subjected to unwelcomed sexual harassment in the form of sexual comments, inappropriate sexual gestures, and sexual advances.

216. Defendant created and sustained an environment of severe and pervasive sexual harassment in the form of allowing and endorsing unwelcomed sexual comments, inappropriate sexual gestures, and sexual advances.

217. As a direct and proximate result of the intimidating, offensive and hostile environment condoned and sustained by Defendants, Dillingham repeatedly reported the sexual harassment to her supervisor both verbally and in writing.

218. Defendant's actions amount to discrimination on the basis of sex through the creation of a hostile work environment in violation of Ohio R.C. §4112.02(A).

219. The Predatory Patient's sexual harassment of Dillingham occurred while he was under the care of Otterbein.

220. Dillingham's supervisor had knowledge of the Predatory Patient's sexual harassment and failed to take any corrective or remedial action.

221. Dillingham suffered emotional distress as a result of the sexually hostile work environment condoned, tolerated, and protected by Otterbein, and is entitled emotional distress damages pursuant to Ohio R.C. § 4112.01 et seq.

222. As a direct and proximate result of Otterbein's conduct, Dillingham has suffered and will continue to suffer damages.

**COUNT IV: QUID PRO QUO SEXUAL HARASSMENT UNDER R.C. § 4112.02 *et seq.***

223. Dillingham restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

224. As a female, Dillingham is a member of a protected class under R.C. § 4112.02.

225. During her employment, Dillingham was subjected to unwelcome sexual harassment in the form of sexual advances or requests for sexual favors by Predatory Patient.

17

226. Predatory Patient's harassment of Dillingham was endorsed and condoned by her supervisors.

227. The harassment against Dillingham was based on her gender.

228. Dillingham's submission to the unwelcome sexual advances by Predatory Patient was an express or implied condition for receiving job benefits and/or continued employment.

229. Dillingham rejected Predatory Patient's acts of sexual harassment.

230. Dillingham rejected Augenstein's support for Predatory Patient's acts of sexual harassment.

231. Otterbein knew or should have known about Predatory Patient's sexual advances towards Dillingham.

232. Otterbein failed to remedy Predatory Patient's misconduct or stop him from continued acts of sexual harassment against Dillingham.

233. As a direct and proximate result of Predatory Patient's conduct, Dillingham suffered and will continue to suffer damages.

**COUNT V: SEXUAL HARASSMENT UNDER 42 U.S.C. 2000e-2 *et seq***

234. Dillingham restates each and every paragraph of this Complaint as though it were fully restated herein.

235. Dillingham was subjected to unwelcomed sexual harassment in the form of sexual comments, inappropriate sexual gestures, and sexual advances.

236. Defendant created and sustained an environment of severe and pervasive sexual harassment in the form of allowing and endorsing unwelcomed sexual comments, inappropriate sexual gestures, and sexual advances.

237. As a direct and proximate result of the intimidating, offensive and hostile environment condoned and sustained by Defendants, Dillingham repeatedly reported the sexual harassment to her supervisor both verbally and in writing.

238. Defendant's actions amount to discrimination on the basis of sex through the creation of a hostile work environment in violation of 42 U.S.C. 2000e-2 et seq.

239. The Predatory Patient's sexual harassment of Dillingham occurred while he was under the care of Otterbein.

240. Dillingham's supervisor had knowledge of the Predatory Patient's sexual harassment and failed to take any corrective or remedial action.

241. Dillingham suffered emotional distress as a result of the sexually hostile work environment condoned, tolerated, and protected by Otterbein, and is entitled emotional distress damages pursuant to 42 U.S.C. 2000e-2 et seq.

242. As a direct and proximate result of Otterbein Middletown, LLC's conduct, Dillingham has suffered and will continue to suffer damages.

## COUNT VI: QUID PRO QUO SEXUAL HARASSMENT UNDER 42 U.S.C. 2000e-2 *et seq.*

243. Dillingham restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

244. As a female, Dillingham is a member of a protected class under 42 U.S.C. 2000e-2 et seq.

245. During her employment, Dillingham was subjected to unwelcome sexual harassment in the form of sexual advances or requests for sexual favors by Predatory Patient.

246. Predatory Patient's harassment of Dillingham was endorsed and condoned by her supervisors.

247. The harassment against Dillingham was based on her gender.

248.    Dillingham's submission to the unwelcome sexual advances by Predatory Patient was an express or implied condition for receiving job benefits and/or continued employment.

249.    Dillingham rejected Predatory Patient's acts of sexual harassment.

250.    Dillingham rejected Augenstein's support for Predatory Patient's acts of sexual harassment.

251.    Otterbein knew or should have known about Predatory Patient's sexual advances towards Dillingham.

252.    Otterbein failed to remedy Predatory Patient's misconduct or stop him from continued acts of sexual harassment against Dillingham.

253.    As a direct and proximate result of Predatory Patient's conduct, Dillingham suffered and will continue to suffer damages.

## COUNT VII: HOSTILE WORK ENVIRONMENT ON THE BASIS OF GENDER DISCRIMINATION AND SEXUAL HARASSMENT IN VIOLATION OF TITLE VII

254.    Dillingham restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

255.    During her employment with Defendants, Dillingham was subjected to offensive and harassing conduct by Augenstein based on her gender.

256.    Defendants knew or should have known of the harassing conduct against Dillingham by Augenstein.

257.    During her employment with Defendants, Dillingham was subjected to offensive and harassing conduct by the Predatory Patient based on her gender.

258.    Defendants knew or should have known of the harassing conduct against Dillingham by the Predatory Patient.

259.    Defendants condoned, tolerated and ratified this harassing conduct.

260. This harassing conduct was severe and/or pervasive.

261. This harassing conduct was offensive to Dillingham.

262. This harassing conduct interfered with Dillingham's ability to perform her/his job duties.

263. Defendants' offensive and harassing conduct created a hostile and/or abusive work environment for Dillingham.

264. Defendants' offensive and harassing conduct created a hostile and/or abusive work environment for the reasonable person similarly-situated to Dillingham.

265. As a direct and proximate result of Defendants' conduct, Dillingham suffered and will continue to suffer damages.

### COUNT VIII: HOSTILE WORK ENVIRONMENT ON THE BASIS OF GENDER DISCRIMINATION AND SEXUAL HARASSMENT IN VIOLATION OF R.C. § 4112.01 *et seq.*

266. Dillingham restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

267. During her employment with Defendants, Dillingham was subjected to offensive and harassing conduct by Augenstein based on her gender.

268. Defendants knew or should have known of the harassing conduct against Dillingham by Augenstein.

269. During her employment with Defendants, Dillingham was subjected to offensive and harassing conduct by the Predatory Patient based on her gender.

270. Defendants knew or should have known of the harassing conduct against Dillingham by the Predatory Patient.

271. Defendants condoned, tolerated and ratified this harassing conduct.

272. This harassing conduct was severe and/or pervasive.

273.    This harassing conduct was offensive to Dillingham.

274.    This harassing conduct interfered with Dillingham's ability to perform her/his job duties.

275.    Defendants' offensive and harassing conduct created a hostile and/or abusive work environment for Dillingham.

276.    Defendants' offensive and harassing conduct created a hostile and/or abusive work environment for the reasonable person similarly-situated to Dillingham.

277.    As a direct and proximate result of Defendants' conduct, Dillingham suffered and will continue to suffer damages.

## COUNT IX: VIOLATION OF OHIO WHISTLEBLOWER STATUTE R.C. § 4113.52

278.    Dillingham restates each and every prior paragraph of this complaint, as if it were fully restated herein.

279.    Otterbein took adverse actions against Dillingham in retaliation for making for making the Whistleblower Reports, Patient Abuse Report, and Patient Neglect Report.

280.    The adverse actions that Otterbein took against Dillingham for making the Whistleblower Reports, Patient Abuse Report, and Patient Neglect Report violated R.C. § 4113.52.

281.    Otterbein took adverse employment actions against Dillingham in retaliation for making for making the Whistleblower Reports, Patient Abuse Report, and Patient Neglect Report.

282.    The adverse employment actions that Otterbein took against Dillingham for making the Whistleblowers Reports violated R.C. § 4113.52.

283.    The adverse actions that Otterbein took against Dillingham for making the Whistleblower Reports, Patient Abuse Report, and Patient Neglect Report violated R.C. § 4113.52.

## COUNT X: VIOLATION OF OHIO NURSING HOME WHISTLEBLOWER STATUTE R.C. § 3721.24

284. Dillingham restates each and every prior paragraph of this complaint, as if it were fully restated herein.

285. Otterbein took adverse actions against Dillingham in retaliation for making for making the Whistleblower Reports, Patient Neglect Report, and Patient Abuse Report.

286. The adverse actions that Otterbein took against Dillingham for making the Whistleblower Reports, Patient Neglect Report, and Patient Abuse Report violated R.C. § 3721.24.

287. Otterbein took adverse employment actions against Dillingham in retaliation for making for making the Whistleblower Reports, Patient Neglect Report, and Patient Abuse Report.

288. The adverse employment actions that Otterbein took against Dillingham for making the Whistleblower Reports, Patient Neglect Report, and Patient Abuse Report violated R.C. § 3721.24.

289. The adverse actions that Otterbein took against Dillingham for making the Whistleblower Reports, Patient Neglect Report, and Patient Abuse Report violated R.C. § 3721.24.

## COUNT XI: RETALITION IN VIOLATION OF R.C. § 5123.61

290. Dillingham restates each and every prior paragraph of this Complaint as if it were fully restated herein.

291. Otterbein is a DODD regulated care facility assisting individuals with developmental disabilities and those with special needs.

292. Otterbein provides accommodations for at least 50 or more unrelated individuals and supervision and personal care services for three or more of those individuals who are dependent on the services of others by reason of age or physical or mental impairment.

293. Otterbein provides accommodations to three or more unrelated individuals who are dependent upon the services of others by reason of age or physical or mental impairment and, to at least one of those individuals, skilled nursing care.

294. Otterbein is an "employer" within the meaning of R.C. §5123.61(L).

295. Dillingham is an "employee" within the meaning of R.C. § 5123.61(L).

296. During the relevant period, Dillingham performed work or services for Defendant.

297. During her employment, Dillingham made a report of suspected abuse, neglect, or exploitation of one or more residents.

298. It was reasonable for Dillingham to believe that Otterbein's actions constituted abuse, neglect, or exploitation of a resident.

299. Dillingham engaged in protective activity within the meaning of R.C. § 5123.61(L).

300. Defendant knew that Dillingham engaged in a protected activity within the meaning of R.C. § 5123.61(L).

301. Defendant retaliated against Dillingham by suspending her.

302. Defendant retaliated against Dillingham by terminating her employment based on her report of suspected abuse, neglect, or exploitation of a resident.

303. Defendant's termination of Dillingham's employment followed closely in time to her protected activity.

304. Defendant's termination of Dillingham's employment was in violation of R.C. § 5123.61(L).

305. As a direct and proximate result of Defendant's conduct, Dillingham suffered and will continue to suffer damages.

## COUNT XII: UNLAWFUL AIDING, ABETTING, AND INCITING OF DISCRIMINATION
### (as against Defendant Augenstein)

306.   Dillingham restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

307.   Pursuant to R.C. § 4112.02(J), it is unlawful "[f]or any person to aid, abet, incite, compel, or coerce the doing of any act declared by this section to be an unlawful discriminatory practice..."

308.   Augenstein aided, abetted, incited, coerced, and/or compelled Otterbein's discriminatory adverse employment actions against Dillingham.

309.   Augenstein aided, abetted, incited, coerced, and/or compelled Otterbein's discriminatory treatment of Dillingham.

310.   Augenstein violated R.C. § 4112.02(J) by aiding, abetting and inciting discrimination.

311.   Dillingham suffered emotional distress as a result of Augenstein conduct, and is entitled emotional distress damages pursuant to R.C. § 4112.01 et seq.

312.   As a direct and proximate result of Augenstein's conduct, Dillingham has suffered and will continue to suffer damages, including economic, emotional distress and physical sickness damages.

313.   In aiding, abetting and inciting discrimination against Dillingham based on gender, Defendants acted with malice or reckless indifference to the rights of Dillingham, thereby entitling Dillingham to an award of punitive damages.

## COUNT XIII: INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

314.   Dillingham restates each and every prior paragraph of this Complaint, as if it were fully restated herein.

315. Otterbein intended to cause Dillingham emotional distress or knew that their acts or omissions would result in serious emotional distress to Dillingham.

316. Otterbein's conduct was so extreme and outrageous as to go beyond all possible bounds of decency and was such that it can be considered as utterly intolerable in a civilized community.

317. As a direct and proximate result of Otterbein's acts and omissions as set forth above, Dillingham has suffered mental anguish of such a serious nature that no reasonable person could be expected to endure it.

318. As a direct and proximate result of Otterbein's conduct and the resulting emotional distress, Dillingham has suffered and will continue to suffer damages, including economic, emotional distress, and physical sickness damages.

## **<u>DEMAND FOR RELIEF</u>**

WHEREFORE, Jamie Dillingham demands from Defendants the following:

(a) Issue an order requiring Otterbein to restore Dillingham to one of the positions to which she was entitled by virtue of her application and qualifications, and expunge her personnel file of all negative documentation;

(b) An award against each Defendant of compensatory and monetary damages to compensate Dillingham for physical injury, physical sickness, lost wages, emotional distress, and other consequential damages, in an amount in excess of $ 25,000 per claim to be proven at trial;

(c) An award of punitive damages against each Defendant in an amount in excess of $ 25,000;

(d) An award of reasonable attorneys' fees and non-taxable costs for Dillingham's claims as allowable under law;

(e) An award of the taxable costs of this action; and

(f)  An award of such other relief as this Court may deem necessary and proper.

Respectfully submitted,

/s/ *Trisha Breedlove*

Trisha Breedlove (0095852)
Greg Shumaker (0095552)
**SPITZ, THE EMPLOYEE'S LAW FIRM**
1103 Schrock Road, Suite 307
Columbus, Ohio 43229
Phone: (614) 556-4811
Fax:    (216) 291-5744
Email: trisha.breedlove@spitzlawfirm.com
           greg.shumaker@spitzlawfirm.com

*Attorneys For Plaintiff, Jamie Dillingham*

## JURY DEMAND

Plaintiff Jamie Dillingham demands a trial by jury by the maximum number of jurors permitted.

/s/ *Trisha Breedlove*

Trisha Breedlove (0095852)
Greg Shumaker (0095552)