UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| JAMIE DILLINGHAM,<br>    Plaintiff, | Case No. 1:23-cv-00820<br>Barrett, J.<br>Litkovitz, M.J. |
| vs. | |
| OTTERBEIN MIDDLETOWN, LLC, *et al.*,<br>    Defendants. | REPORT AND RECOMMENDATION |

Plaintiff Jamie Dillingham initiated this action against defendants Otterbein Middletown, LLC ("Otterbein") and Kristina Augenstein,[1] alleging state and federal claims for gender discrimination in employment and sexual harassment, violations of Ohio's whistleblower statutes, and intentional infliction of emotional distress. This matter is before the Court on defendants' joint motion for partial dismissal (Doc. 10), plaintiff's response (Doc. 12), and defendants' reply (Doc. 13).

Defendants previously filed a motion to dismiss (Doc. 8). In response, plaintiff filed the amended complaint at issue here (Doc. 9). Accordingly, defendants' earlier motion should be denied as moot.

**I. Background**

On August 10, 2022, Otterbein hired Dillingham, a female, as a nursing assistant at its long-term care facility in Middletown, Ohio. Augenstein supervised Dillingham in that role.

During her employment, Dillingham allegedly made "constant and regular" reports of patient neglect between August 10, 2022 and June 30, 2023. (Doc. 9 at PAGIED 66). She reported the alleged patient neglect to Augenstein and another supervisor named "Katie"[2] both

---

[1] Although plaintiff named "Christina Augenstein" as a defendant, Augenstein's first name is "Kristina." (Doc. 10 n.1).
[2] "Katie," whose last name is not known, was not named as a defendant in this case.

orally and in writing. According to Dillingham, Augenstein became increasingly hostile towards Dillingham after the reports. (Doc. 9 at PAGEID 68).

In December 2022, Dillingham alleges that she and another employee witnessed an employee named "Sheila" abuse a patient by "roughly yanking" the patient out of a chair. (Doc. 9 at PAGEID 68). According to Dillingham, she and the other employee reported the abuse to Augenstein, who "interrogated them separately" and "ordered" them not to discuss the alleged abuse with anyone else. (*Id.* at PAGEID 69-70). Sheila allegedly threatened to physically assault Dillingham for making the abuse report, but, according to Dillingham, Otterbein failed to discipline Sheila or take action to stop Sheila's threats against her. Following the abuse and neglect reports, Augenstein allegedly "became openly angry and rude" towards Dillingham and "micromanaged" Dillingham's work. (Doc. 9 at PAGEID 69, 71).

Dillingham further alleges that Otterbein knowingly subjected her to sexual harassment by forcing her to care for a male patient who "repeatedly groped Dillingham and other female employees" and lured Dillingham to his room at night "by calling for medical assistance, only to then confront Dillingham by openly stroking his erect penis while naked." (Doc. 9 at PAGEID 72). Dillingham reported the patient's actions to Augenstein and Katie, but neither her supervisors nor Otterbein investigated the incidents or took remedial action to protect her from continued sexual abuse. (*Id*. at PAGEID 72-75).

On June 29, 2023, Augenstein and Katie suspended Dillingham. They terminated Dillingham's employment on June 30, 2023. According to Dillingham, defendants suspended and then terminated her employment in retaliation for her reports and because of her gender without following their own investigative and progressive discipline policies. (Doc. 9 at

2

PAGEID 74-78).

Plaintiff's amended complaint alleges claims for: gender discrimination in violation of Ohio Rev. Code § 4112.01, *et seq.* (Count 1); gender discrimination in violation of 42 U.S.C. § 2000e-2, *et seq.* (Count 2); sexual harassment in violation of Ohio Rev. Code § 4112.02 *et seq.* (Count 3); quid pro quo sexual harassment in violation of Ohio Rev. Code § 4112.02 *et seq.* (Count 4); sexual harassment in violation of 42 U.S.C § 2000e-2 *et seq.* (Count 5); quid pro quo sexual harassment in violation of 42 U.S.C. § 2000e-2 *et seq.* (Count 6); hostile work environment in violation of Title VII (Count 7); hostile work environment in violation of Ohio Rev. Code § 4112.01 *et seq.* (Count 8); violation of Ohio's whistleblower statute, Ohio Rev. Code § 4113.52 (Count 9); violation of Ohio's nursing home whistleblower statute, Ohio Rev. Code § 3721.24 (Count 10); retaliation in violation of Ohio Rev. Code § 5123.61 (Count 11); unlawful aiding, abetting, and inciting of discrimination under Ohio law against Augenstein only (Count 12); and intentional infliction of emotional distress (Count 13). (Doc. 9).

Defendants moved to dismiss Count 13 (intentional infliction of emotional distress) pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. (Doc. 10 at PAGEID 98). In addition, defendants move to dismiss Counts 1 through 8 against defendant Augenstein individually. (*Id.*).

In her response, plaintiff voluntarily dismisses Counts 1 through 8 against Augenstein individually. (Doc. 12 at PAGEID 145 n. 1). However, plaintiff opposes defendants' motion to dismiss her claim for intentional infliction of emotional distress (Count 13). (Doc. 12).

## II. Standard of review

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint

3

for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss, a complaint must comply with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009) (quoting Rule 8(a)).

A complaint must include sufficient facts to state a claim that is plausible on its face and not speculative. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Mere "labels and conclusions [or] a formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. A court examining the sufficiency of a complaint must accept well-pleaded facts as true, but not legal conclusions or legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678–79.

**III. Analysis**

    **A. Intentional Infliction of Emotional Distress (Count 13)**

To state a claim for intentional infliction of emotional distress ("IIED") under Ohio law, a "plaintiff must show, among other things, that the defendant's conduct was so extreme and outrageous 'as to go beyond all bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.'" *Doe v. Archdiocese of Cincinnati*, No. 1:23-cv-318, 2024 WL 2845935, at *3 (S.D. Ohio June 5, 2024) (quoting *Yeager v. Loc. Union 20*, 6 Ohio St.3d 369, 453 N.E.2d 666, 671 (Ohio 1983)); *see also Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1110 (6th Cir. 2008) (quoting *Ekunsumi v. Cincinnati Restoration, Inc.,* 120 Ohio App.3d 557, 698 N.E.2d 503, 506 (1997)). "[M]ere insults, indignities, threats, annoyances,

4

petty oppressions, or other trivialities" do not support a claim for intentional infliction of emotional distress. *Doe v. Archdiocese of Cincinnati*, 2024 WL 2845935, at *3. However, "[d]eterminations on whether conduct is extreme and outrageous is often a fact intensive inquiry." *Id.* at *4 (citing *Morningstar v. Circleville Fire & EMS Dep't*, No. 2:15-cv-3077, 2018 WL 1365842, at *17 (S.D. Ohio Mar. 16, 2018)). "Courts hesitate to dismiss IIED claims where the allegations could reasonably be inferred to create a basis for extreme and outrageous conduct." *Id*. While dismissal is appropriate where the alleged conduct "is clearly too minor to be extreme and outrageous," in other cases "an extreme and outrageous determination is more appropriate for consideration once discovery is complete." *Id*.

When a plaintiff asserts intentional infliction of emotional distress in a wrongful termination action, "the employer's conduct 'does not rise to the level of "extreme and outrageous conduct" without proof of something more'—even when the termination was based on discrimination." *Conrad v. U.S. Bank Nat'l Ass'n*, 391 F. Supp. 3d 780, 792 (S.D. Ohio 2019) (quoting *Talley*, 542 F.3d at 1111) (dismissing intentional infliction of emotional distress claim alleging defendants targeted, harassed, bullied, embarrassed, and ultimately discharged employee due to age or in retaliation for complaining about harassment, bullying, and disparate treatment in the workplace). *But see Doe v. Archdiocese of Cincinnati*, 2024 WL 2845935, at *4 (refusing to dismiss IIED claim before discovery completed where coworker allegedly pulled plaintiff into office and kissed and groped her over her objections). Without requiring something more, "every discrimination claim would simultaneously become a cause of action for the intentional infliction of emotional distress." *Day v. Nat'l Elec. Contractors Ass'n*, 82 F. Supp. 3d 704, 710 (S.D. Ohio 2014) (quoting *Godfredson v. Hess & Clark, Inc.,* 173 F.3d 365, 376 (6th

5

Cir. 1999)).

In the case at bar, defendants contend that plaintiff's allegations do not rise to the outrageous or extreme conduct required to support an IIED claim. (Doc. 10 at PAGEID 102-05). Dillingham alleges that defendants knowingly subjected her to repeated unwanted sexual advances and physical assaults by a particular patient. (Doc. 9 at PAGEID 72). The patient allegedly "repeatedly groped Dillingham's breasts, as well as other sensitive areas of Dillingham's body," and, on multiple occasions, lured Dillingham to his room at night "by calling for medical assistance, only to then confront Dillingham by openly stroking his erect penis while naked." (*Id.*). Dillingham alleges that she complained to both Augenstein and Katie about the sexual harassment, but defendants failed to investigate the incidents or take action to protect Dillingham from further assaults. (*Id.* at PAGEID 73-75).

In at least one case, a court considered an employer's intentional refusal to investigate or intervene in repeated sexual harassment outrageous enough to support an intentional infliction of emotional distress claim. *See Barhouma v. Athenian Assisted Living, Ltd.*, No. 1:14-cv-02214, 2015 WL 5437786 (N.D. Ohio 2015) (refusal to take corrective action where another employee "placed his hands under Plaintiff's shirt and panties" on a daily basis sufficiently outrageous to support intentional infliction of emotional distress claim). *But see Gardner v. CLC of Pascagoula, LLC*, No. 1:15-cv-423, 2017 WL 487031, at *11 (S.D. Miss. Feb. 6, 2017)[3] (Care facility entitled to summary judgment on intentional infliction of emotional distress claim from nursing assistant told to continue to care for male patient who groped and assaulted her or be

---

[3] The cited decision was affirmed in part and reversed in part on other grounds and remanded in *Gardner v. CLC of Pascagoula, L.L.C.*, 894 F.3d 654 (5th Cir. 2018). The Fifth Circuit opinion was later withdrawn and superseded by 915 F.3d 320 (5th Cir. 2019), *as revised* (Feb. 7, 2019). The final Fifth Circuit opinion in that case did not address the intentional infliction of emotional distress issue.

6

fired because "conduct is not utterly intolerable in a civilized society, since [plaintiff] was hired to do the work necessary to care for patients who cannot conform their behavior to the standards of civilized society.").

Defendants argue that the alleged perpetrator, a patient in a long-term care facility, was not an Otterbein employee so defendants are not responsible for his conduct. (Doc. 13 at PAGEID 157). However, the alleged perpetrator's actions are not the focus of plaintiff's claim. Plaintiff's amended complaint alleges that Otterbein and Augenstein knowingly and repeatedly subjected plaintiff to the patient's sexual harassment and assaults, refused to investigate her complaints, and refused to take action to minimize her exposure to the patient or otherwise protect her from his abuse. (Doc. 9 at PAGEID 72-75). Accepting plaintiff's allegations as true, as required at the Rule 12(b)(6) stage of proceedings, the Court is unprepared to declare that those alleged facts are not sufficiently outrageous to support a claim for intentional infliction of emotional distress. Accordingly, plaintiff's IIED claim should be allowed to proceed only as to those particular allegations. Defendants correctly contend that defendants' alleged actions and inaction in response to plaintiff's whistleblower and other employment discrimination reports do not rise to the level of outrageous conduct required to state a claim for intentional infliction of emotional distress.

**IT IS THEREFORE RECOMMENDED THAT:**

1. Defendants' motion to dismiss (Doc. 8) be **DENIED AS MOOT**.

2. Defendants' motion to dismiss Count 13 of plaintiff's amended complaint for intentional infliction of emotional distress (Doc. 10) be **DENIED**.

3. Defendants' motion to dismiss Counts 1 through 8 against individual defendant

7

Augenstein (Doc. 10) be **GRANTED**.

Date: 7/19/2024

Karen L. Litkovitz
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| JAMIE DILLINGHAM,<br>    Plaintiff, | Case No. 2:23-cv-00820<br>Barrett, J.<br>Litkovitz, M.J. |
| vs. | |
| OTTERBEIN MIDDLETOWN, LLC, *et al.*,<br>    Defendants. | |

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation within **FOURTEEN (14) DAYS** after being served with a copy thereof. This period may be extended further by the Court on timely motion by either side for an extension of time. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).